Betsy Jefferis, Esq.
Nevada State Bar No. 12980
**WILSON ELSER MOSKOWITZ EDELMAN & DICKER**
300 South 4th Street
Las Vegas, Nevada 89101
Telephone: 702-727-1400
Facsimile: 702-727-1401
Betsey.jefferis@wilsonelser.com

Attorneys for Defendants RICHARD BARON, BARON BROTHERS NURSERY, INC., BARON BROTHERS, INC.

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| MATTHEW JOSEPH CUPP,<br><br>        Plaintiff,<br><br>    vs.<br><br>RICHARD BARON, individually, BARON BROTHERS NURSERY, INC., a California corporation, BARON BROTHERS, INC., a Delaware corporation, BARON BROTHERS PARTNERSHIP, L.P., a Delaware Limited Partnership, DOE INDIVIDUALS 1-100, inclusive, and ROE ENTITIES 1-100, inclusive,<br><br>        Defendants. | Case No.: 2:20-CV-00285<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS OR TRANSFER VENUE** |

COMES NOW Defendants RICHARD BARON, BARON BROTHERS NURSERY, INC., and BARON BROTHERS, INC. (collectively "Defendants") by and through their counsel of record Betsy Jefferis, Esq. of Wilson, Elser, Moskowitz, Edelman & Dicker LLP and hereby submit their Motion to Dismiss under FRCP 12(b)(1) and 12(b)(6) or Transfer Venue.

. . .

. . .

. . .

This Motion is based upon and supported by the following Memorandum of Points and Authorities, and the pleadings, orders, and papers on file herein, in conjunction with such evidence and further authorities as the court may require at the time this matter is considered.

DATED: March 23, 2020

WILSON ELSER MOSKOWITZ EDELMAN & DICKER

<u>/s/ Betsy Jefferis</u>
BETSY JEFFERIS, ESQ.
Nevada State Bar No. 12980
300 South 4th Street
Las Vegas, Nevada 89101
Attorneys for Defendants RICHARD BARON, BARON BROTHERS NURSERY, INC., BARON BROTHER S, INC.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff's Verified Complaint (ECF No. 3), filed in the District Court of Nevada, vaguely and insufficiently alleges claims against multiple California Defendants based on an illegal agreement the parties purportedly entered into to grow and cultivate industrial hemp on Defendants' California Property, before the 2018 U.S. Farm Bill was passed or signed into law removing hemp from federal classification as a Controlled Substance. The result is that the Verified Complaint not only fails to state a claim against each named Defendant, but each claim is tainted by illegal conduct and purpose. That includes Plaintiff's claims grounded in fraud, which also fail to satisfy the particularity requirements under FRCP 9(b). Therefore, Plaintiff has failed to state a claim upon which relief can be granted by this Court or over which this Court has subject matter jurisdiction, requiring the Court to dismiss this action under FRCP 12(b)(1) and/or 12(b)(6).

Alternatively, even if Plaintiff's Verified Complaint is found to state a claim upon which relief could be granted against one or more Defendants, this action should have been filed in the Central District Court of California, not the District Court of Nevada. While Plaintiff's Verified Complaint alleges that Plaintiff is currently an individual residing in Nevada, each of the named Defendants are alleged as residents of and/or operating and conducting business in the County of Ventura, State of California. The hemp cultivation business that allegedly began in 2018 also occurred in California, on Defendants' property there. Indeed, nearly all of the relevant conduct, obligations, representations, transactions, witness thereto, and/or applicable governing laws related to Plaintiff's claims occurred in or involve the County of Ventura, California and the State of California, not the State of Nevada. Accordingly, if this Court does not dismiss this action in its entirety, Defendants respectfully request that the Court transfer this matter to the Central District Court of California, which is the proper and more convenient District Court for this action.

### II. FACTUAL BACKGROUND AND PROCEDRAL HISTORY

Plaintiff's Verified Complaint, ECF No. 3, alleges nine (9) causes of action against Defendants for 1) Breach of Contract, 2) Breach of the Covenant of Good Faith and Fair Dealing,

3) Promissory Estoppel/Detrimental Reliance, 4) Fraud, 5) Fraud in the Inducement/Intentional Misrepresentation, 6) Negligent Misrepresentation, 7) Unjust Enrichment, 8) Quantum Meruit, and 9) Declaratory Relief. However, each of these claims is tainted by the Verified Complaint's admissions and allegations of illegality and/or is not supported with sufficient specificity as required by FRCP 9(b).

Notably, Plaintiff chooses to begin the Verified Complaint's general allegations by asserting that the parties first met while in the custody of the California Youth Authority, and that after their parole and release from the California penal system, they became involved in the sale and distribution of narcotics. (See Plaintiff's Verified Complaint, ECF No. 3 (the "Complaint") ¶¶ 9-10). In so doing, the Complaint foreshadows the illegal nature of the alleged business arrangement that is basis for Plaintiff's claims.

The Complaint then proceeds to allege events and conduct that occurred in, or involves the governing laws of, the State of California and the County of Ventura, California. Specifically, the Verified Complaint alleges the following facts upon which the causes of action in the Complaint are based:

1. That Defendant Richard Baron or an entity under his control owned, operated and/or manages more than 80 acres between two ranches located in Ventura County, California. (the "California Property") (See Complaint ¶ 29)
2. That in February 2018, Mr. Baron informed Plaintiff that he had obtained a loan for $1.2 million to prevent a foreclosure on the California Property. (Complaint ¶ 32)
3. That Plaintiff then suggested that together they "legally" grow marijuana and cannabis on the California Property, at which point Mr. Baron informed Plaintiff that his loan agreement had a "no marijuana" clause prohibiting cultivation of marijuana on the California Property. (Complaint ¶ 33)
4. That Plaintiff then suggested that the parties cultivate "Industrial Hemp" and that Mr. Baron go to trade shows to try to meet people in the hemp industry. (Complaint ¶ 34)
5. That in following up on Baron's new contacts and resources from said trade shows,

     the parties began to work toward building a hemp business utilizing Baron's California Property. (Complaint ¶¶ 35-36)

6. That it became apparent to Plaintiff that the industrial hemp business would be more lucrative and viable than the cultivation of "legal" marijuana. (Complaint ¶ 7)

7. That on or about August 5, 2018 [before the 2018 U.S. Farm Bill was passed and signed into law in December 2018], during a meeting between Plaintiff and Baron, Baron told Plaintiff that he had planted 50,000 hemp seeds and they were all sprouting, and Plaintiff questioned Defendant about the "no marijuana" provision in his loan agreement. (Complaint ¶ 42-45)

8. That on or about August 5, 2018, Plaintiff also sent emails to Baron "delineating the terms" of a purported partnership agreement between them. (Complaint ¶¶ 40, 46-47)

9. While Plaintiff's Verified Complaint does not attach any writings, establish any offer and acceptance, or otherwise identify the clear terms or obligations of his partnership arrangement, Plaintiff does allege that his August 5, 2018 email stated that "4. I will monitor the first grow effort. 5. You provide accommodation and transportation as needed" and contact the county to inform them of their industrial hemp plan. (Complaint ¶¶ 47, 49). Aside from Defendant's apparent obligation to provide accommodation and transportation and a demand that he inform the "county", there is [no] further indication of Defendants' obligations or any mention of the parties applying for or obtaining any licenses or otherwise waiting [for] federal legalization before proceeding with their hemp operation.

10. That 'based upon the admission by [Baron] to Plaintiff that he was growing 50,000 hemp plants in violation of the Fillmore Ranch loan provisions which Plaintiff helped secure, Plaintiff felt uncertain as to his agreement with [Baron], and how that partnership agreement would be honored by him, which compelled Plaintiff to solidify his agreement with [Baron] by putting it "in writing"' (Complaint ¶ 49)

11. That Plaintiff discussed forming a Nevada corporation to be used as a corporate shell

to take the parties' industrial hemp business public. (Complaint ¶ 61)

12. That on or about September 29, 2018, Plaintiff filed corporate filings with the Nevada Secretary of State for Hemp Professionals, Inc. ("HPI"). (Complaint ¶ 62) Notably, per the Nevada Secretary of State's website, as of October 1, 2018, Defendant Baron was identified as HPI's President, with an address in Somis, California, and Plaintiff Cupp was identified as HPI's Treasurer, with an address in Valencia, California.

13. That on October 3, 2018, Baron gave Plaintiff a tour of the California Property, showing all of the actively growing hemp, after which Plaintiff handed Defendant the HPI incorporation documents in Defendant's Camarillo, California office. (Complaint ¶ 71)

14. That on or about March 2019, Defendant Baron met with an individual who "brought a large investment firm Investco Capital Management Inc. to the table." (Complaint ¶ 80). Plaintiff further alleges Investco is a Canadian-based company but does not allege where such meetings took place, and there is no allegation that such meetings took place in Nevada. (Complaint ¶ 81).

15. That Investco made a $250,000 deposit to Defendant Baron (Complaint ¶ 83).

16. That on March 28, 2019, Plaintiff advised Defendant Baron to capitalize HPI (Complaint ¶ 89)

17. That on or about April 18, 2019, Investco sent Defendant Baron a letter of intent entitled "Purchase and Sale of the Business Assets of Baron Brothers Nursery Inc. Hemp Operations Assets" (Complaint ¶ 92)

18. That the Investco letter of intent outlined money that would be deposited into escrow to be used by Defendant Baron. (Complaint ¶ 94)

19. That Defendant Baron informed Plaintiff that the bank would not wire transfer money to HPI's bank account because it has the word "Hemp" in it. (Complaint ¶ 104). Plaintiff does not allege where Defendant's bank account is, or allege that Defendant's bank account is with a Nevada financial institution.

1  In summary, Plaintiff appears to weakly allege that in 2018 the parties agreed to some sort of business arrangement between them to grow industrial hemp on Defendant Baron's California Property, that Defendant started growing the industrial hemp plants on his California Property by August 2018, and that they then formed a Nevada corporation in September or October 2018 related to the cultivation of such hemp on Defendant's California Property. Plaintiff then alleges that in 2019 a third-party investor invested its money directly with Defendant Baron and that Baron advised Plaintiff that his bank would not transfer money to HPI because of its involvement with hemp. Unsurprisingly, Plaintiff does not make any mention of the fact that the 2018 United States Farm Bill, removing hemp and hemps seeds from the statutory definition of marijuana and the DEA schedule of Controlled Substances, did not pass Congress and was not signed into law until December 2018 and did not become effective until January 1, 2019, several months *after* the parties had already allegedly agreed to grow hemp, proceeded to grow hemp and formed a corporation in Nevada for the very purpose of cultivating the hemp growing on Defendants' California Property, to take such corporation "public". In other words, the actions, agreements and corporations alleged in the Verified Complaint were for an illegal purpose and were conducted in an openly illegal manner before there was any federal law in place legalizing such conduct.

Therefore, the alleged agreements and business arrangements of the parties, if any, are void as a matter of federal law, Plaintiff has failed to state a claim upon which relief can be granted by this Court, and this action should be dismissed in its entirety. In the alternative, if the Court decides not to dismiss this action in its entirety, then this matter should be transferred to the Central District Court of California due to all of the Defendants residing and operating their business in Ventura County, California; the alleged property and hemp cultivation occurring in Ventura County, California; California's laws regarding hemp cultivation being implicated; and the likelihood of most of the relevant witnesses (including financial institutions and alleged investors) being in or conducting business in California.

. . .

. . .

7

**PLAINTIFFS' SECOND MOTION TO COMPEL FURTHER DISCOVERY RESPONSES**

### III. LEGAL ARGUMENT

#### A. Legal Standards

Under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), a claim may be dismissed if it does not "state a claim upon which relief can be granted." A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. See, *N. Star Int'l v. Ariz. Corp. Common*, 720 F.2d 578, 581 (9th Cir. 1983). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). That is, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, supra at 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Generally, a District Court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss. See, *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1990) (citations omitted). Also, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994). Plausibility, in the context of a motion to dismiss, means that the plaintiff has pleaded facts which allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

FRCP 12(b)(1) also provides for dismissal of an action for lack of subject matter jurisdiction. "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may take one of two forms. *Thornhill Publ'g Co. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). It may be a "facial" challenge or it may be a "factual" challenge. Id. "In a facial

attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Alternatively, "[a] factual challenge relies on affidavits or any other evidence properly before the court to contest the truth of the complaint's allegations." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 (9th Cir. 2014). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch*, 343 F.3d 1036, 1040 (9th Cir. 2003).

**B. This Case Must be Dismissed under FRCP 12(b)(1) and 12(b)(6)**

      **1.**      **<u>Plaintiff's Claims Would Require this Court to Have Subject Matter Jurisdiction to Find and Enforce a Federally Illegal Contract or Business Arrangement for a Federally Illegal Purpose Between Each of the Named Parties</u>**

As the Court noted in *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*., 430 F. Supp. 2d 1157, 1162 (D. Nev. 2006), 'Nevada recognizes the rule that "traditionally neither courts of law nor equity will interpose to grant relief to parties to an illegal agreement." Thus, where a party seeks to enforce a contract found to be invalid as contrary to public policy, the court will dismiss the action and leave the parties as it finds them.['] See *Weil v. Neary*, 278 U.S. 160, 174 (1929) (finding that enforcement of such contracts, even when "actual evil" does not follow, would destroy the safeguards of the law and lessen the prevention of abuses.)

Plaintiff's Verified Complaint alleges that in February and August of 2018, the parties entered into a partnership agreement to cultivate industrial hemp on Defendants' California Property, Plaintiff was aware that Defendant Baron had started growing hemp on the California Property for that purpose by August 2018, and Plaintiff even expressed concerns to Defendant Baron over the potential issues created by a "no marijuana" provision in Defendant Baron's loan for the California Property. All of Plaintiff's claims arise from this alleged partnership to grow

industrial hemp in California in the first half of 2018, purportedly for the ultimate purpose of taking such business "public" and obtaining non-refundable investment in the business. (See Complaint ¶ ¶ 45-49, 60, 82). However, there are several insurmountable problems with these verified allegations, not the least of which is the fact that there are no clearly asserted terms or promises of an agreement or business arrangement between each of the named parties[1] and to the extent there are, such agreement or business arrangement was clearly illegal under federal law at the time of the agreement or arrangement, thus requiring the Nevada District Court to dismiss this case for lack of subject matter jurisdiction and/or failure to state a claim under FRCP 12(b)(1) and 12(b)(6) because it would require this Court to have federal jurisdiction to find and then enforce an agreement between Plaintiff and each of the named Defendants for the operation of an industrial hemp business in California, which was federally illegal at the time of its alleged formation and otherwise governed by California law.

Specifically, prior to the 2018 U.S. Farm Bill which became effective on January 1, 2019, under the Controlled Substance Act ("CSA"), codified at 21 USC § 801, et seq., hemp was considered a controlled substance. Nonetheless, the alleged agreements or business arrangements and related conduct to cultivate hemp in California occurred in February and August of 2018, well before the 2018 U.S. Farm Bill became law. There were no prior exceptions for commercial production of hemp, and Plaintiff does not anywhere allege that such a business arrangement was legally permissible for him under federal law at the time. Thus, litigation of Plaintiff's claims at issue would result in the District Court assisting in the potential enforcement of an illegally formed contract or business arrangement created for an illegal purpose in 2018, in blatant disregard of federal law. Under these facts and circumstances, the Court does not have jurisdiction to find and enforce such an agreement or business arrangement and/or Plaintiff has failed to state a claim upon which relief can be granted.

---

[1] Plaintiff's general allegations focus entirely on Defendant Richard Baron. Yet, each of Plaintiff's causes of action are asserted against "Defendants, and each of them" without any further factual support.

**2.     Plaintiff's Fraud Claims Also Fail to Satisfy the Specificity Requirements of FRCP 9(b)**

In alleging fraud, Plaintiff must satisfy the requirements of FRCP 9(b). Rule 9(b) serves three purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints "as a pretext for the discovery of unknown wrongs"; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to "prohibit [ ] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." I*n re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir.1996) (quoting *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985)) Thus, under Rule 9(b), when a plaintiff alleges fraud, "the circumstances constituting fraud or mistake shall be stated with particularity." To satisfy this standard, a plaintiff must plead facts as to the "who, what, when, where, and how" of the alleged fraud. *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124 (9th Cir. 2009). In a case with multiple defendants, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007).

To determine if the elements of fraud have been pleaded to state a cause of action, Courts will also look to state law. *Vess v. Ciba-Geigy Corpo. USA*, 317 F.3d 1097, 1105–06. The elements of fraud under Nevada law are: (a) a false representation; (b) made with knowledge or belief that it is false or without a sufficient basis of information; (c) intent to induce reliance; (d) justifiable reliance; and (e) damages resulting from the reliance. *Ries v. Olympian, Inc*., 103 Nev. 709, 747 P.2d 910, 911 (1988). These same elements are also applicable in California. (See e.g. *Cadlo v. Owens-Illinois, Inc*., 125 Cal. App. 4th 513, 519 (2004)).

Here, Plaintiff's three fraud claims (asserted against "Defendants, and each of them" in the Complaint's Fourth through Sixth Causes of Action) are not only wholly redundant of Plaintiff's contract-based claims, but are insufficiently pled for fraud. A review of the fraud claims

reveal that they rely on the same cut-and-paste paragraph of vague averments: "That at the time of the formation of the CONTRACT between the parties, Defendants, *and each of them*, made *certain* false and/or misleading statements to Plaintiff, including, without limitation, statements and representations to Plaintiff related to the formation of a 50/50 partnership, Defendant RICHARD's ability to successfully navigate and/or consummate a business deal the magnitude of the one being done with Invesco, Defendants' ability to make Plaintiff "a very wealthy man" and/or the true ownership of the agricultural properties contemplated by the parties for the creation of their commercial industrial hemp business and the "newco" being formed in concert with Invesco." (Emphasis added) (See Complaint ¶¶ 131, 139, 147).

Despite the contention that Defendants, and each of them, made "certain" false and/or misleading statements to Plaintiff, the Complaint completely fails to identify the "who, what, when, where, and how" of those statements by each Defendant, other than to vaguely and ambiguously allude that the unspecified "certain" statements were related to the parties' alleged partnership, Defendant Baron's business acumen and ability to make Plaintiff "wealthy", and ownership of agricultural property. In other words, Plaintiff's fraud claims against each Defendant are based on nothing more than conclusory averments and completely lack any specificity to establish a) a false representation; (b) made by a specific Defendant with knowledge or belief that it is false or without a sufficient basis of information; (c) with intent to induce reliance by Plaintiff; (d) justifiable reliance by Plaintiff; and (e) damages to Plaintiff resulting from such reliance.

Indeed, Plaintiff's entire claim for damages in excess of $75,000 is also suspect insofar as Plaintiff's allegations appear to indicate that he did nothing more than file corporate documents for a Nevada Corporation (for an illegal purpose at the time), go out to California to tour the hemp growing on Defendant's California Property, contact a few potential interested parties, do some research, and sit back and remotely offer Defendant Baron suggestions and advice while Baron did all the actual leg work cultivating the hemp on his property and communicating with potential investors. There are no allegations showing that Plaintiff put in any capital into the business, or

in any way substantially assisted Defendant in cultivating the hemp at the California Property, or in obtaining a deal with Investco that ultimately went with another company, and that Plaintiff was thereby damaged in excess of $75,000. The Verified Complaint's lack of specificity as to each element of fraud and each named Defendant requires dismissal of those claims.

**C. Alternatively, if not Dismissed, This Action Should Be Transferred to the Central District of California**

**1. This Case Should Be Transferred to the Central District of California for Improper Venue in the Interests of Justice Pursuant to 28 U.S.C. §§ 1406(a) and/or 28 U.S.C. § 1631.**

As an alternative, if the Court determines dismissal of this action in its entirety is not warranted, and if it is in the interests of justice, 28 U.S.C. §1406(a) permits this Court to transfer this case if venue is improper. Moreover, this Court may transfer the action pursuant to 28 U.S.C. § 1631, which provides in pertinent part that "[w]henever a civil action is filed . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interests of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed or noticed..." See, e.g., *Clark v. Busey*, 959 F.2d 808, 812 (9th Cir. 1992).

As indicated above and by way of Plaintiff's allegations in the Verified Complaint, venue is improper in Nevada. Venue is however proper in the Central District of California, as Defendant Baron resides in California and that is where all of the named Defendants (i) are subject to personal jurisdiction, (ii) maintain their offices and documents, (iii) operate their business interests, (iv) own the property that is the subject of Plaintiff's claims, and (v) performed the relevant conduct alleged in the Complaint (See Plaintiff's Verified Complaint ¶¶ 2-5, 28-29, 36, 71, 73.) As such, if this Court determines that the action cannot be dismissed in its entirety as to all named Defendant and that a transfer would be in the interests of justice, this action should be transferred to the Central District of California pursuant to 28 U.S.C. § 1406(a) and/or 28 U.S.C. § 1631. See, e.g., *United Truck., Inc. v. Curry Supply Co.,* No. CV08-01046, 2008 WL 4811368 at 12-13 (D. Ariz. Nov. 5, 2008) (transferring action to W.D. Pa. since defendants resided in that

district).

**2. This Case Should Be Transferred to the Central District of California for the Convenience of the Parties, Convenience of the Witnesses, and in the Interests of Justice Pursuant to 28 U.S.C. § 1404.**

In the unlikely event that this Court finds that (i) venue is proper in this judicial district and (ii) Defendants are subject to the personal jurisdiction of this Court, Defendants move, pursuant to 28 U.S.C. § 1404, to transfer venue for the convenience of the parties and witnesses, and interests of justice. In determining whether to transfer a case under 28 U.S.C. § 1404, a court must first determine whether the action might "have been brought" in the transferee district. *Miracle Blade, LLC v. Ebrands Commerce Group, Inc.*, 207 F. Supp. 2d 1136, 1155 (D. Nev. 2006). Then, the court must weigh both public and private factors. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

As an initial matter, this action could have been brought in the Central District of California. Defendant Baron is a California resident, and the named Defendants' businesses and property operate and are found in Ventura County, California. (See Plaintiff's Verified Complaint ¶¶ 2-5, 28-29) Thus, Defendants are subject to the personal jurisdiction of the Central District of California, and this case could have been brought there.

In weighing the public and private factors to determine the propriety of transfer under 28 U.S.C. § 1404, a court should consider the (1) convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. *Miracle Blade, LLC*, 207 F. Supp. 2d at 1155-1156. Courts may also consider: (1) the location where the relevant agreements were negotiated; (2) those most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the parties' contacts with the forum state; (5) events related to the cause of action that took place in the forum state; (6) the differences in cost of litigation between the two forums; (7) the availability of compulsory process for non-party witnesses; and (8) ease of access to sources of proof. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

**PLAINTIFFS' SECOND MOTION TO COMPEL FURTHER DISCOVERY RESPONSES**

Here, as alleged in the Verified Complaint, at all relevant times all of the Defendants resided in, and conducted the alleged hemp cultivation business in California. Since the federally unauthorized cultivation of hemp in California was the purpose of the parties' agreements and occurred on Defendants' property in California, California law would necessarily govern. Coupled with allegations that, among other things, Defendant Baron communicated and met with investors for the alleged hemp business, gave Plaintiff a tour of the hemp growing on the California Property, and received incorporation documents from Plaintiff in California, it is also more likely that non-party percipient witnesses will be available in California rather than Nevada. For all of the above reasons, the Central District of California is the more appropriate and convenient venue for this action to the extent it is not dismissed in its entirety.

## IV. CONCLUSION

Plaintiff has failed to state a claim against the named Defendants that this Court either has subject matter jurisdiction and/or upon which relief can be granted, requiring the Court to dismiss this action in its entirety under FRCP 12(b)(1) and/or FRCP 12(b)(6).

Alternatively, if the Court finds Plaintiff's Verified Complaint states one or more claims against any named Defendant upon which relief by a District Court could be granted, this action should then be transferred to the Central District of California.

DATED: March 23, 2020

WILSON ELSER MOSKOWITZ EDELMAN & DICKER

/s/ Betsy Jefferis
BETSY JEFFERIS, ESQ.
Nevada State Bar No. 12980
300 South 4th Street
Las Vegas, Nevada 89101
Attorneys for Defendants RICHARD BARON, BARON BROTHERS NURSERY, INC., BARON BROTHER S, INC.

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 23rd day of March, 2020, I served the above **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS OR TRANSFER VENUE** through CM/ECF system of the United States District Court for the District of Nevada (or, if necessary, by U.S. Mail, first class, postage pre-paid), upon the following:


BY: */s/ Nicole Hrustyk*
An Employee of
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP